# IN THE UNITED STATES DISTRICT COURT

# FOR THE DISTRICT OF NEW MEXICO

JOHN MITCHELL,

    Plaintiff,

vs.                                                                                           No. CIV 97-0946 LH/RLP

JANET RENO, Attorney General of the
United States, and UNITED STATES
DEPARTMENT OF JUSTICE,

    Defendants.

## MEMORANDUM OPINION AND ORDER

**THIS MATTER** comes before the Court on Plaintiff's Motion to Reverse or Remand Agency Decision (Docket No. 7), filed March 23, 1998; Defendants' Motion for Summary Judgment (Docket No. 10), filed March 23, 1998; and Plaintiff's Motion to Supplement the Record (Docket No. 22), filed July 27, 1998. Plaintiff seeks to reverse or remand the decision of the United States Department of Justice denying his claim for compensation under the Radiation Exposure Compensation Act, 42 U.S.C. § 2210, note (1994) ("RECA" or "the Act"). Although it was determined that Mr. Mitchell, a uranium miner, had developed a compensable disease, pneumoconiosis, his claim was denied on grounds that as a smoker he had not been exposed to sufficient radiation. Plaintiff contends that his classification as a smoker was erroneous. The Court, having considered the pleadings submitted by the parties, the entire administrative record on appeal, and the oral argument of counsel, and otherwise being fully advised, finds that Plaintiff's Motions

to Reverse and to Supplement the Record are not well taken and will be **DENIED** and Defendants' Motion for Summary Judgment is well taken and will be **GRANTED**.

## STATUTORY AND REGULATORY FRAMEWORK

Congress enacted RECA to recognize, assume responsibility for, and apologize to underground uranium miners, individuals subjected atmospheric nuclear test fallout, and their families for injuries believed to have been caused by exposure to large doses of radiation. *See id.* sec. 2(a)-(c). RECA authorizes payment of $100,000.00 to eligible miners as partial restitution for their presumed increased incidence of lung cancer and respiratory diseases. *See id.* secs. 2(a), (b), 5(a)(2)(B). The Attorney General is responsible for establishing procedures governing submission of claims and determining whether claims meet the requirements of the Act. *See id.* sec. 6(a)-(b). Pursuant to the promulgated regulations, *see* 28 C.F.R. § 79.1-.55, apps. A-C., the Radiation Exposure Compensation Unit of the Department of Justice's Tort Branch of the Civil Division (DOJ) administers and enforces RECA's provisions, *see* 28 C.F.R. §§ 79.2(k), 79.50(a).

To qualify for compensation under RECA, a miner or his eligible surviving beneficiary must satisfy each of the following criteria by a preponderance of the evidence:

(a) The claimant was employed in a uranium mine or mines in the states of Arizona, Colorado, New Mexico, Wyoming or Utah;
(b) The Claimant [sic] was so employed during the period beginning on January 1, 1947 and ending on December 31, 1971;
(c) The claimant contracted primary lung cancer or a non-malignant respiratory disease,[1] and

---

[1] "Nonmalignant respiratory disease" is defined as "fibrosis of the lung, pulmonary fibrosis, and corpulmonale related to fibrosis of the lung; and, if the claimant, whether Indian or non-Indian, worked in a uranium mine located on or within an Indian Reservation, the term shall also include moderate or severe silicosis or pneumoconiosis." 42 U.S.C. § 2210 note, sec. 5(b)(3); *see also* 28 C.F.R. § 79.31(i)-(m).

> (1) If a non-smoker, the claimant was exposed during the course of his/her employment in a uranium mine to more than 200 working level months of radiation,[2] or
> (2) If a smoker, then
>   (i) If the incidence of the cancer or the non-malignant respiratory disease occurred before the age of 45, the claimant was exposed during the course of his/her employment in a uranium mine to more than 300 working level months of radiation; or
>   (ii) If the incidence of cancer or the non-malignant respiratory disease occurred after the age of 45, the claimant was exposed during the course of his/her employment in a uranium mine to more than 500 working level months of radiation.

*Id.* § 79.32 (footnotes added); *see also* 42 U.S.C. § 2210 note, sec. 5(a).

RECA does not define the terms "smoker" and "nonsmoker." However, the regulations promulgated by the Attorney General define the term "smoker" as "an individual who has smoked at least one (1) pack year of cigarette products," 28 C.F.R. § 79.31(f), or the equivalent of a total of 365 packs of cigarettes over a lifetime, *see id.* § 79.21(d)("one pack year is defined as an average of 20 cigarettes per day for one year"). A "nonsmoker" is "an individual who never smoked tobacco cigarette products or smoked less than the amount defined in paragraph (f)." *Id.* § 79.31(e). The regulations also require that "each claimant . . . establish that [he] meets each and every criterion of eligibility for at least one of the . . . compensable categories." *Id.* § 79.3(a). The claimant, then, "bears the burden of proving by a preponderance of the evidence the existence of each and every criterion necessary to establish eligibility under any compensable claim." *Id.* § 79.4(a). Thus, as a threshold, the claimant must provide written medical documentation which proves to "a reasonable degree of medical certainty" that he developed a nonmalignant respiratory disease ["NMRD"]. *Id.*

---

[2] A "working level month of radiation" is defined as "radiation exposure at the level of one working level [, the concentration of the short half-life daughters of radon that will release (1.3 x 105) million electron volts of alpha energy per liter of air,] every work day for a month, [170 hours,] or an equivalent exposure over a greater or lesser amount of time." 42 U.S.C. § 2210 note, sec. 5(b)(1)-(2); 28 C.F.R. § 79.31(c)-(d).

§ 79.36(a). This proof may be made through verification by Public Health Service ("PHS") or National Institute of Occupational Safety and Health ("NIOSH") records, by a federally-supported health study, *see id.*, or:

> by the submission of the following contemporaneous medical records, provided that the specified document contains an explicit statement of diagnosis or such other information or data from which the appropriate authorities designated by the Surgeon General or NIOSH can make a diagnosis to a reasonable degree of medical certainty. For purposes of this section, a statement of diagnosis in any of the Indian Health Service records listed below of "restrictive lung disease" will be considered equivalent to a diagnosis of pulmonary fibrosis.
> (1) Pulmonary fibrosis or fibrosis of the lung.
>     . . .
>     (ii) If the claimant is alive, the following:
>         (A) Chest x-rays. A chest x-ray administered in accordance with standard techniques on full size film at quality 1 or 2, and interpretative reports of the x-ray by two certified "B" readers[3] classifying the existence of fibrosis of category 1/0 or higher according to the ILO 1989, or subsequent revisions; and either:
>         (B) Pulmonary function tests. Pulmonary function tests consisting of three tracings recording the results of the forced expiratory volume in one second (FEV1) and the forced vital capacity (FVC) administered and reported in accordance with the Standardization of Spirometry--1987 Update by the American Thoracic Society, and reflecting values for FEVI or FVC that are equal to or less than 75% of the predicted value for an individual of the claimant's age, sex, and height, as set forth in the Tables in appendix A of this part; or
>         (C) Arterial blood-gas studies. A blood-gas study administered at rest in a sitting position, or an exercise blood-gas test, and reflecting values equal to or less than the values set forth in the Tables in appendix B of this part.
>     . . .
> (3) Moderate or severe silicosis or pneumoconiosis. To establish eligibility for compensation for silicosis or pneumoconiosis, a claimant . . . must:
>     (i) Submit the same documentation as is prescribed in paragraph (d)(1) of this section for proof of pulmonary fibrosis; and

---

[3] "Certified 'B' Reader means a physician who has demonstrated proficiency in evaluating chest roentgenograms (x-rays) for quality and for the presence of pneumoconiosis and other roengenographic abnormalities and is certified (and decertified, as may be appropriate) by the National Institute for Occupational Safety and Health." 28 C.F.R. § 79.31(r).

> > (ii) Submit proof of employment in a uranium mine on an Indian Reservation in accordance with the provisions of § 79.33. . . .

*Id.* § 79.36(d)(footnote added). The regulations further require for proof of smoking and nonsmoking:

> (a) The claimant . . . must submit all medical records listed below from any hospital or medical facility that were created within the period six (6) months before and six (6) months after the date of diagnosis of . . . the nonmalignant respiratory disease:
> (1) All history and physical examination reports;
> (2) All operative reports;
> (3) All pathology reports;
> (4) All physician or hospital discharge summaries.
> (b) If the medical records listed in paragraph (a) of this section . . . contains [sic] information indicating that the claimant was a smoker, the Radiation exposure Compensation Unit will notify the claimant . . . and afford that individual the opportunity to submit other written medical documentation or contemporaneous records to establish that the claimant was not a smoker in accordance with the provisions of § 79.52(b)[, Review and resolution of claims].

*Id.* § 79.37. The DOJ will not accept written affidavits or declarations submitted by the claimant or any other person as proof of any of the criterion for eligibility. *See id.* § 79.4(c). Furthermore, "[a] claimant . . . will not be entitled to any presumption otherwise provided for in these regulations where reliable, material evidence exists which tends to disprove the existence of the fact that is the subject of the presumption." *Id.* § 79.4(b).

After reviewing a claim and the supporting documentation, the Assistant Director issues a written decision granting or denying the claim. *See id.* §§ 79.50(a), 79.52. If a claimant is denied compensation, he can appeal to a designated Appeals Officer within 60 days of the date of the decision. *See id.* §§ 79.50(b), 75.53(d). The Appeals Officer's decision constitutes the Department of Justice's final agency action on the claim. *See id.* § 79.53(d). This final action ripens the

decision for judicial review.  *See* 42 U.S.C. § 2210, note, sec. 6(j). Moreover, there is a provision for re-filing of claims under certain circumstances.  Specifically, the regulations state:

> A claim that was filed and denied may be filed again in those cases where the claimant or eligible surviving beneficiary obtains documentation he/she did not possess when the claim was previously filed that establishes:
> (1)  An injury specified in the Act,
> (2)  Residency in the affected area,
> (3)  Onsite participation in a nuclear test, or
> (4)  Exposure to a defined minimum level of radiation in a uranium mine or mines during a designated time period.

28 C.F.R. § 79.51(j).

## FACTUAL BACKGROUND

John Mitchell, a 76-year-old Navajo Indian, worked as a uranium miner in New Mexico from 1955 through 1961.  (R. at 18-22.)  He filed a claim under RECA on June 23, 1995, seeking compensation for the nonmalignant respiratory disease ("NMRD") pulmonary fibrosis or fibrosis of the lung, caused by his exposure to radiation in uranium mines.  (*Id.* at 11-19.)  In support of his claim, Plaintiff initially submitted the following medical records:  1)  a pulmonary evaluation dated November 4, 1985, from the University of New Mexico; 2) various health records dated from March 1991 through December 1991 from Indian Health Services in Shiprock, including a chart entry noting that Mr. Mitchell had restrictive lung disease; 3) results of an arterial blood-gas test, dated March 28, 1995, from Southwest Memorial Hospital; and 4) results of a chest x-ray taken by X-Ray Associates of New Mexico indicating possible pneumoconiosis, dated March 16, 1992. (Materials Submitted Pl.'s Br. Supp. Mot. Rev. or Remand (Mats. Supp. Mot. Rev.) at R12-R14, R21-R26.)

The DOJ acknowledged Mr. Mitchell's claim by letter on June 26, 1995. (R. at 25.) The DOJ then sent the March 1992 chest x-ray to NIOSH to confirm whether Mr. Mitchell had a compensable disease. (*Id.* at 26.) Based upon the negative results of the B-readings performed by NIOSH and additional records the DOJ obtained from Miners Colfax Medical Center, including another x-ray submitted by Plaintiff, dated January 12, 1993, which also had negative B-readings, the DOJ sent a "deficiency letter" to Mr. Mitchell on October 25, 1995, indicating that he had not established a compensable disease. (*Id.*. at 32-33.) The letter further informed Plaintiff that pursuant to regulations, within 60 days he needed to submit sufficient documentation showing that he had contracted a compensable lung disease. (*Id.*) At the request of Plaintiff's attorney, the DOJ subsequently extended the time allowed Plaintiff to submit additional documents to March 30, 1996. (*Id.* at 36.)

On May 7, 1996, Plaintiff submitted a new chest x-ray taken on February 28, 1996, at southwest Memorial Hospital. (*Id.* at 5.) The DOJ sent this x-ray to NIOSH for review, but proceeded to act on Mr. Mitchell's application, apparently on the assumption that the x-ray would establish a compensable disease. (*See id.*) On June 11, 1996, the DOJ sent Plaintiff a second deficiency letter, informing him that although he had been exposed to 313.5 WLMS of radiation exposure, as a smoker who incurred his disease after age 45, 500 WLMs were required. (*Id.* at 38-39.)

The DOJ initially found that Mr. Mitchell was a smoker because there was a substantial time gap in the medical records submitted on his behalf. Specifically, there were no medical records submitted within the "window period" surrounding his chosen diagnosis date of March 16, 1992, to establish that he was a nonsmoker, as required by 28 C.F.R. § 79.37(a). (*Id.* at 38.) The June 11

letter also stated that it was a "final notice" to Mr. Mitchell that he needed to submit the requisite documents under 29 C.F.R. § 79.33-37(a) within 60 days to overcome a denial of his claim. (*Id.* at 39.) Plaintiff evidently did not respond to this request. (*See id.* at 5, 42.)

The DOJ ultimately denied Mr. Mitchell's claim on September 9, 1996, on the grounds that Mr. Mitchell had not been exposed to the requisite amount of radiation to qualify for compensation under RECA. (*Id.* at 41-42.) The DOJ premised its determination that Mr. Mitchell was a smoker on a review of the medical documentation it had received. (*Id.*) Specifically, because the DOJ lacked the required records surrounding the diagnosis date of March 16, 1992, it presumed Mr. Mitchell was a smoker. (*Id.* at 38.) The proffered reason for this presumption was that Mr. Mitchell failed to meet his burden as a claimant to show by a preponderance of the evidence that he met the criteria contained in the regulations to receive compensation under RECA. (*Id.* at 38-9.)

Mr. Mitchell appealed the DOJ's decision on September 27, 1996, contesting its finding that he smoked the requisite number of cigarettes and enclosing additional medical records from Indian Health Services in Shiprock, dated February 1992 through June 1993, (*id.* at 125-60), to prove that he was a nonsmoker. The DOJ responded by letter dated November 8, 1996, noting that these additional records contained an explicit reference to Mr. Mitchell smoking cigarettes "occasionally." (*Id.* at 158.) The DOJ letter further indicated that the additional records revealed extensive hospitalizations in May and June of 1993 at other facilities, for which it lacked any records, and extended an additional 30-45 days to Mr. Mitchell to supplement his application with those missing records. (*Id.* at 161.)

Plaintiff's attorney responded to the DOJ by letter dated January 6, 1997, submitting some of the omitted records from Vista Grande Nursing Home, and stated that "none of the records at

either facility contain any mention of smoking." (*Id.* at 166.) However, the first medical document from Vista Grande Nursing Home in the Record on Appeal is a History and Physical Examination chart of Mr. Mitchell which indicates that he has "a history of smoking but this is uncertain." (*Id.* at 169.) The only reference to support Mr. Mitchell's claim that he was a nonsmoker was on the 1993 x-ray from Miners Colfax Medical Center, designating Plaintiff as a "non-Smoker." (*Id.* at 116.)

On May 21, 1997, the DOJ issued its final action letter, affirming the denial of Mr. Mitchell's claim for compensation under RECA because he failed to meet the WLM requirement of 500. (*Id.* at 542-46.) This WLM limit was set because Mr. Mitchell failed to present medical records demonstrating that he was more likely than not, a nonsmoker. (*Id.* at 546.) The final action letter also indicated that the agency reviewed all medical records submitted, not just those records surrounding its assumed diagnosis date of March 16, 1992. (*Id.*) The letter closed by notifying Plaintiff that RECA permits refiling if additional information is obtained which clarifies eligibility for recovery under the regulations. (*Id.*) This appeal followed the DOJ's final action.

## STANDARD OF REVIEW

RECA allows for judicial review of denial of compensation claims only in the United States District Court: "The court shall review the denial on the administrative record and shall hold unlawful and set aside the denial if it is arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 42 U.S.C. § 2210 note, sec. 6(l). Thus, judicial review falls with in the strictures of the Administrative Procedure Act, 5 U.S.C. § 705. *See Howell v. Reno*, 939 F. Supp. 802, 805-6 (D. Colo. 1996). Therefore, review of the DOJ's decision is narrow, and as long as the agency examined the relevant information and "articulated a rational connection between the

facts found and the decision made," the decision must be upheld. *Olenhouse v. Commodity Credit Corp.*, 42 F.3d 1560, 1574 (10th Cir. 1994); *see also Mount Evans Co. v. Madigan*, 14 F.3d 1444, 1453 (10th Cir. 1994) (stating that a court is not to substitute its judgment for that of the agency, but must affirm the agency's decision is there exists a rational basis for the decision). The agency "need only demonstrate that it considered relevant factors and alternatives after a full ventilation of issues and that the choice it made was reasonable based on that consideration." *Val Farms v. Espy*, 29 F.3d 1470, 1473 (10th Cir. 1994). However, agency action will be set aside as unlawful if it is shown that it "relied upon factors which Congress did not intend it to consider, entirely failed to consider an important aspect of the problem, offered an explanation for its decision that runs counter to the evidence before [it], or is so implausible that it could not be ascribed to a difference in view or the product of agency expertise." *Mount Evans Co.*, 14 F.3d at 1453 (quoting *Thomas Brooks Chartered v. Burnett*, 920 F.2d 634, 644 (10th Cir. 1990)).

In light of the above facts, the statutory and regulatory guidelines, and the standard of review on appeal, the issue to be addressed by this Court is whether the DOJ's decision to classify Mr. Mitchell as a "smoker" was arbitrary and capricious, an abuse of discretion, or otherwise not in accordance with law. I conclude that it was not.

### PLAINTIFF'S MOTION TO SUPPLEMENT THE RECORD

Plaintiff moved to supplement the administrative record on appeal after discovering that pertinent documents concerning his status as a "nonsmoker" from Miners' Colfax Medical Center, dating from December 1988 and January 1993, were omitted from the record. (*See* Pl.'s Mot. Supp., Exs.) The 1988 records include a patient history form on which Plaintiff indicated that he did not then smoke and had never smoked. (*Id.*, Exs. at 7.) Additionally, Mr. Mitchell was

designated a nonsmoker under "SMOKER CODE." (*Id.*, Exs. at 9.) These records also include letters by the hospital's pulmonary consultant to Shiprock Public Health Service Hospital and the director to Mr. Mitchell, which state respectively that Plaintiff "is a non-smoker" and that he does "not smoke." (*Id.*, Exs. at 10, 13-14.) The 1993 records include a questionnaire on which Mr. Mitchell indicated that he had not "smoked cigarettes for six months or more." (*Id.*, Exs. at 18.)

These records are relevant, perhaps even compelling, evidence of Mr. Mitchell's status as a nonsmoker. Review of this appeal, however, is limited to the administrative record compiled by the DOJ, upon which it based its final decision. *See* 42 U.S.C. § 2210 note, sec. 6(*l*). Additionally, counsel for both parties agreed at oral argument that there is no legal authority allowing remand of this matter to the DOJ for reconsideration based on a supplemented record, and the Court also has found none. Therefore, Plaintiff's Motion to Supplement must be denied. However, at oral argument the government's counsel stated that she had discussed this supplemental material with the DOJ, which agrees that Mr. Mitchell can refile his application based on the new documents, pursuant to 28 C.F.R. § 79.51(j). Thus, although the Court feels unduly restrained in its review of this matter in light of this new evidence, which strongly calls into question the appropriateness of the DOJ's final decision, the prospect of his reapplication makes the decision the Court now must reach at least tolerable.

**PLAINTIFF'S MOTION TO REVERSE OR REMAND AGENCY DECISION**

**A)** **The applicability of the WLM requirement to nonmalignant respiratory diseases.**

Plaintiff begins his argument by asking this Court to consider complex epidemiological studies which question the correlation of radiation exposure with NMRDs. Specifically, he claims that the WLM requirements and smoker classifications relate to causation of lung cancer, not to

NMRDs such as pneumoconiosis and fibrosis. In support of this argument, Plaintiff submits numerous references to House and Senate Committee reports, medical articles, and testimony on lung cancer and radiation -- all criticizing the link between radiation and fibrosis and pneumoconiosis. (*See generally* Mat. Supp. Mot. Rev. at M1-71.) Plaintiff claims that dust particles in poorly ventilated mines caused his NMRD, not radiation. Thus, Plaintiff contends the WLM requirement and smoking status requirement, both dealing with exposure to radiation, have no applicability to his claim.

There has been criticism of RECA's WLM requirements and smoking standards by various committees assigned to investigate legislative reconstruction of the RECA, as cited by Plaintiff.[4] (*See, e.g., id.* at M39-42 (U.S. Senate Committee on Labor & Human Resources, *Health Effects of Radiation Exposure*, 101st Cong., 2nd sess., 1990).) The RECA Committee has, in fact, recommended changes in these requirements which reflect a more accurate epidemiological foundation. (*See id.* at M18-19 (RECA Committee *Final Report* (Comm. Print pp. 52-53)(1996).) However, the crucial fact remains that Congress has not implemented these suggested changes. Additionally, neither this Court nor the DOJ has the right to augment or change the administration of the statutes governing RECA. This task lies solely with Congress.

Furthermore, as Defendants point out, Plaintiff has not alleged to any significant degree that the RECA is constitutionally infirm. In the absence of such infirmity,

---

[4] Some of the articles submitted by Plaintiff on this issue, however, contravene his position. Specifically, the excerpt from the Hearing before the Committee on Labor and Human Resources, (Mats. Supp. Mot. Rev. at M40), states that "[w]e have shown that the radiation in the mines does contribute to this [NMRD] group of deaths," although exact causation factors remain undeterminable. (*See also id.* at M21 (statement of Dr. Archer in *Final Report* of the RECA Committee, dated July 1996: "we did show epidemiologically that the exposure to radiation almost certainly contributed to the development of these diseases [discussing NMRDs], and they are much higher among the uranium miners than among nonmining groups").)

> the proper forum for changing the congressional statutes or administrative regulations based on scientific knowledge is Congress or the administrative agency charged with execution of congressional intent and policy. Bright line classifications such as "smoker" or 'nonsmoker" and numerical cutoffs are bound to be under-inclusive in certain situations. However, they are rationally related to the purposes and policy of the statute sufficient to withstand constitutional attack.

*Howell v. Reno*, 939 F. Supp. 802, 809 (D. Colo. 1996)**.** Both RECA and its regulations base eligibility for compensation for NMRDs such as pneumoconiosis upon the WLMs of radiation exposure in uranium mines. *See* 41 U.S.C. § 2210 note, sec. 5(a). Until and unless Congress changes these requirements, agencies and courts must abide by the statutes and regulations as written. Therefore, it was neither arbitrary and capricious, nor an abuse of discretion, for the DOJ to apply the regulations as currently written.

**B)** **The DOJ's designation of Plaintiff as a cigarette smoker.**

The DOJ's letter dated May 21, 1997, indicated that Mr. Mitchell did not satisfy the eligibility requirements set forth in the statute and implementing regulations because he did not meet the WLM requirement for a "smoker" who contracted a compensable disease after the age of 45. (R. at 542.) The DOJ presumed Plaintiff was a "smoker" because he failed, after numerous opportunities, to present medical documentation surrounding his diagnosis date to establish otherwise, in accordance with 28 C.F.R. § 79.37(a). (*Id*. at 41-42, 542.) The burden of proof in this regard rested with Plaintiff to demonstrate by a preponderance of the evidence that he satisfies *all eligibility criteria* required to qualify for compensation under RECA. *See* 28 C.F.R. § 79.32. These criteria include a claimant's smoking status.

Mr. Mitchell had two opportunities to provide additional documentation to show that he was a "nonsmoker," as evidenced by the deficiency letters sent October 25, 1995, and June 11, 1996,

before his claim was initially denied on September 9, 1996. (R. at 32-33, 38-39, 40-42.) Mr. Mitchell failed to rebut the presumption designating him as a "smoker" in both instances. In fact, in appealing the agency's decision, Plaintiff submitted additional medical records which showed that Mr. Mitchell "smokes cigarettes occasionally," (R. at 158), and that he had "a history of smoking, but this is uncertain," (*id*. at 169). Thus, instead of rebutting the presumption of smoking, he seemingly confirmed it. Although mere reference to occasional smoking does not definitively establish the minimum one pack-year of smoking required of a "smoker," this threshold is very low. Even if Mr. Mitchell smoked fewer than three cigarettes per week, he would have smoked the equivalent of one pack-year in fifty years. Given the fact that Mr. Mitchell was 74 years old at the time of his application, the DOJ was not an unreasonable or arbitrary in classifying him as a smoker.

Plaintiff also claims that the DOJ should have given him a presumption of nonsmoking because of the literature indicating that Navajos smoke less than suggested by their self-reporting in health studies or medical charts. (*See* Mats. Supp. Mot. Rev. at M15-17.) However, the regulations on this issue are clear and state that a claimant is not entitled to any presumption that might be afforded in the regulations where "reliable, material evidence exists which tends to disprove the existence of the fact that is the subject of the presumption." 28 C.F.R. § 79.4(b). Thus, Mr. Mitchell is not entitled to a presumption of nonsmoking, despite his status as a Navajo. Moreover, the regulations direct the DOJ to base its determination as to a claimant's smoking status on medical records only, not on additional literature. *See id.* §§ 79.37, 79.2(e), (j), 79.4(c). Although one reference from Miners Colfax Medical Center referred to Mr. Mitchell as a "non-smoker," (R. at 116), in light of the other references in the administrative record to his smoking, the

DOJ's determination that Plaintiff was a smoker was not arbitrary and capricious or an abuse of discretion.

**C)** **The DOJ's designation of the March 16, 1992, x-ray date as the date of diagnosis.**

Plaintiff argues that the DOJ's designated date of March 16, 1992, as the pivotal date of diagnosis was arbitrary and capricious, and thus caused it to ignore relevant evidence submitted by Plaintiff establishing that he was a "nonsmoker." However, the DOJ's final letter denying Plaintiff's claim on May 27, 1997, states specifically that the agency reviewed "all of the medical records supplied in support of Mr. Mitchell's RECA claim." (*Id*. at 546.) Thus, even if the agency's designation date was arbitrary, which is dubious at best, it was harmless. The agency ultimately reviewed all of the records Mr. Mitchell submitted in support of his claim.

The regulations base the determination of whether a claimant is a smoker or nonsmoker upon documentation submitted six-months before, and six-months after the date of diagnosis of a NMRD. *See* 28 C.F.R. § 79.37(a). The DOJ determined the date of diagnosis of Mr. Mitchell's NMRD to be March 16, 1992, the date of a chest x-ray and two B-readings initially submitted by Plaintiff to the DOJ. Plaintiff claims that the true date of diagnosis was June 1991, when the Indian Health Service facility in Shiprock noted on his chart that he had restrictive lung disease. This date would limit the DOJ to reviewing only the records submitted in 1991 in determining Mr. Mitchell's smoking status. Although Plaintiff is correct in his assertion that a statement of diagnosis in an Indian Health Service record of "restrictive lung disease" can show medical eligibility, he does not address the fact that this statement must be made in "any of the Indian Health Service records *listed below*." *Id.* § 79.36(d)(emphasis added). Those records "listed below" include only chest x-rays, pulmonary function tests, and arterial blood-gas studies. *See id.* § 79.36(d)(1)(ii)(A)-(C). The

record Mr. Mitchell cites as containing the diagnosis of restrictive lung disease is not one of the enumerated records, but is rather a routine chart notation. Therefore, it was neither irrational nor arbitrary for the DOJ to designate the March 16, 1992, x-ray date as the formal date of diagnosis.

Moreover, given Mr. Mitchell's medical history, it would seem that the diagnosis occurred over a continuing period dating from June 1991 to February 1996, which would require the agency to review all records from January of 1991 through August of 1996. In fact, as the DOJ stated in its final denial, it reviewed "all of the records supplied" by Mr. Mitchell. (R. at 546.)

**D)** **The DOJ's trust obligation to Native Americans.**

Plaintiff's final contentions center on the DOJ's alleged failure to construe Mr. Mitchell's claim liberally, in consonance with the federal government's trust responsibilities toward Native Americans. This argument lacks merit.

There is no evidence that the DOJ breached the government's fiduciary relationship with Native Americans in denying Mr. Mitchell's claim. "[T]he fiduciary relationship springs from the statutes and regulations which 'define the contours of the United States' fiduciary responsibilities.'" *Pawnee v. United States*, 830 F.2d 187, 192 (Fed. Cir. 1987) (quoting *United States v. Mitchell*, 463 U.S. 206, 224 (1983)). This trust responsibility, however, does not authorize a court "to go contrary to and beyond the regulations," and supply a remedy to a claimant when he does not meet the requisite criteria. *Id.* at 191.

The fiduciary relationship between the federal government and Native Americans "imposes upon an agency an affirmative duty to assist an Indian claimant to receive the maximum benefits allowed him under the program." *Bedoni v. Navajo-Hopi Indian Relocation Comm'n*, 878 F.2d 1119 (9th Cir. 1989). However, the DOJ has met its duty in this regard in affording Plaintiff

numerous opportunities to supplement the record and in reviewing all documentation submitted by Mr. Mitchell. There is no evidence that the omission of the pertinent records from Miners' Colfax Medical Center, which are the subject of Plaintiff's Motion to Supplement, was due to any failure on the agency's part, intentional or otherwise. It was primarily Mr. Mitchell's responsibility to ensure that all relevant documentation was before the DOJ.

Although Plaintiff further maintains that the definition of "smoker" in the regulations is illiberal, he does not challenge the constitutionality of those regulations. Thus, in the absence of "compelling circumstances" or "constitutional constraints" justifying departure from the established procedure of paying deference to agency construction of statutes, the RECA regulations stand. *See Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.*, 435 U.S. 519, 543-44 (1978)**.**

Finally, as discussed above, the DOJ has stated in open court that Mr. Mitchell will be provided the opportunity to resubmit his claim for compensation under 28 C.F.R. § 79.51(j) to include the new documentation he has from Miners' Colfax Medical Center. This is further evidence that the DOJ will continue to meet its duty to review Mr. Mitchell's claim liberally and will uphold its fiduciary obligations toward Native Americans in general.

**DEFENDANTS' MOTION FOR SUMMARY JUDGMENT**

In considering a motion for summary judgment, the Court must examine all evidence in the light most favorable to the Plaintiff. *See Moya v. United States,* 35 F.3d 501, 502-03 (10th Cir. 1994). FED. R. CIV. P. 56(c) further requires that there be no genuine issues of material facts. *See Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986). The parties do not dispute the underlying facts set forth in the administrative record. Therefore, given the Court's disposition of

Plaintiff's Motion to Reverse or Remand Agency Decision, Defendants Motion for Summary Judgment will be granted.

**IT IS HEREBY ORDERED** that Plaintiff's Motion to Supplement the Record (Docket No. 22), filed July 27, 1998, is **DENIED**.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Reverse or Remand Agency Decision (Docket No. 7), filed March 23, 1998, is **DENIED.**

**IT IS FURTHER ORDERED** that the Defendants' Motion for Summary Judgment (Docket No. 10), filed March 23, 1998, is **GRANTED** and the decision of the United States Department of Justice's Radiation Exposure Compensation Program is **AFFIRMED.**

_____
**UNITED STATES DISTRICT JUDGE**